## BAILEY LOAN CO. v. SEWARD *et al.*

1. The chapters on guaranty (Comp. Laws, §§ 4293–4296) and suretyship (§§ 4297–4320) are to be construed in the light of the distinction that a surety "enters into the contract primarily for the benefit of the debtor"

while with the guarantor "the benefit of the principal debtor is no part of the inducement to him to contract"; since the commissioners, in preparing the Civil Code for New York (which was never adopted in that state), made such distinction in their notes to Sec. 1558 thereof, defining a surety, of which Comp. Laws, Sec. 4297, is a copy; and it will be presumed that the provisions of the proposed New York code adopted in the Dakota code were adopted as construed by the commissioners of that state.

2. A complaint alleged execution to plaintiff of a note by one of the defendants; that at and before delivery thereof it was indorsed, and payment thereof "guarantied" by the other defendants on the back of the note as follows: "For value received, we hereby waive protest on the within note, and we hereby guaranty payment of same." *Held*, that though the answers of such indorsers admitted the allegations of the complaint, and set up as a defense failure of plaintiff to comply with their demand that he proceed against the maker of the note and the stock pledged by him to plaintiff as security, and though such defense is not available for a guarantor, but only for a surety, it was not error to refuse direction of a verdict for plaintiff against defendant indorsers, asked for on the ground that they were guarantors, and not sureties; it being apparently conceded that they made their contract to give credit to the maker of the note, and not for any benefit to themselves, and they being in the case merely sureties. FULLER, J., dissenting, on the ground that the answer admitted that they were guarantors, and that the case was tried below and argued on appeal on the theory that they were guarantors.

3. Under Comp. Laws, Sec. 4305, providing that "a surety may require his creditor to proceed against the principal or to pursue any other remedy in his power which the surety himself cannot pursue and which would lighten his burden; and if in such case the creditor neglects to do so the surety is exonerated to the extent to which he is thereby prejudiced,"— where a surety on a note relies for a defense on failure of the creditor to proceed to sell stock pledged by the principal debtor, he must show not merely that the stock was of some value when the note became due, but that he made demand on the creditor to proceed against it.

(Opinion filed Nov. 20, 1896.)

Appeal from circuit court, Pennington county. Hon. WILLIAM GARDNER, Judge.

Action on two promissory notes. From a judgment for defendants Price and Buell, plaintiff appeals. Reversed.

The facts are stated in the opinion.

*Charles W. Brown* and *S. J. Parsons,* for appellant.

The terms surety and guarantor are in the books used interchangeably. and as having the same meaning. The distinction between them is, at common law, shadowy, whatever may be the change made by our statute. A surety is treated as an original promisor, and is held to know every default of his principal. And a guarantor of payment or performance was also, at common law, treated as an original promisor, and liable without demand or notice. Brandt on Sur. & Guar. §§ 1 and 170. At common law mere delay on the part of a creditor to proceed against the principal, or to enforce any other remedy, does not exonerate a guarantor or surety. Brown v. Curtis, 2 N. Y. 225; Bloom v. Warden, 14 N. W. 395; Huff v. Slife, 41 N. W. 289; Smith v. Freyler, 1 Pac. 214; Hungerford v. O'Brien, 34 N. W. 161; Benedict v. Thoe, 35 N. W. 10; Harris v. Newell, 42 Wis. 687; Roberts v. Hawkins, 38 N. W. 575; Fuller v. Tomlinson, 12 N. W. 127, Ray v. Brenner, 12 Kan. 107; Bellows v. Lovell, 5 Pick. 310; Allen v. Rightmere, 20 Johns. 363; Train v. Jones, 11 Vt. 446; Noyes v. Nichols, 28 Vt. 174; Bank v. Hopkins, 53 Conn. 354; S. C. 5 Atl. 601; City of Memphis v. Brown, 20 Wall. 268; Dane v. Corduan, 24 Cal. 158; Bingham v. Mears (N. D.) 61 N. W. 808; Brandt on Sur. & Guar., §§ 204, 205 and 208.

*Chauncey L. Wood* and *W. O. Temple*, for respondents.

Even at the common law a pledgee was required to exercise reasonable care, diligence and attention in the disposition of pledged property, and the preservation of its value, and if he allowed it to perish or become worthless in his hands the loss fell on him. Remsen v. Beatman, 25 N. Y. 556; Hawkins v. Hubbard, 2 S. D. 631, 51 N. W. 774; Bank v. Gilman. 6 Dak. 304; Lambertson v. Windom, 12 Minn. 151; Griswar v. Hinson, 6 S. W. 906; Bank v. O'Connell, 61 N. W. 162; Maury v. Coyle, 34 Md. 235. While the pledgee of corporate stock is not required to sell upon request of the pledgor, yet if he fails to do so he holds the stock at his peril, and is liable for any loss occasioned by his failure to sell. O'Neill v. Wigham, 87 Pa. St

394; Howard v. Brigham, 98 Mass. 133; Nuzum v. Davis, 133 Mass. 343; Colquett v. Stultz, 65 Ga. 305; Richardson v. Ins. Co., 27 Gratt. 749; Franklin Saving Inst. v. Preettorius, 6 Mo. App. 470. A request and failure to sell tends to show negligence, and negligence is always a question for the jury. Goodall v. Richardson, 14 N. H. 567; Tissue v. Howard, 27 Atl. 1104; Mingus v. Daugherty, 54 N. W. 66.

CORSON, P. J. This was an action brought by plaintiff against the defendant Seward as principal, and the defendants Price and Buell as guantors, of two promissory notes for $1,-000, executed by said Seward to plaintiff. Defendants Price and Buell recovered judgment, and the plaintiff appeals.

Respondent's objection to the consideration of the appellant's assignment of errors on the ground that the bill of exceptions contains no specification of the errors relied on cannot be entertained, for the reasons stated in Peart v. Railroad Co. (S. D.) 67 N. W. 837. Nor is their point concerning the undertaking well taken, as money was deposited in lieu thereof as provided in Sec. 5218, Comp. Laws. The guaranty upon the back of each of the notes signed by said Price and Buell was as follows: "For value received, we hereby waive protest of the within note, and we hereby guaranty payment of the same, with all costs and expenses paid or incurred in collecting the same." The answer of Price and Buell contained the following defenses:

"(2) That on or about the 21st day of February, 1894, the defendants Warren W. Price and Charles J. Buell requested the plaintiff to proceed to collect the said note from the defendant William H. Seward, the maker thereof, and then and there gave notice to the plaintiff that, in case of its failure to sue the said maker, that these defendants would hold themselves discharged from any obligations upon the said note as indorsers and guarantors thereof. (3) That at the time of the said request or demand upon the plaintiff the said William H.

Seward, the maker of the note, was then amply able to pay the same, and had sufficient property within the state of South Dakota and the county of Pennington, subject to execution, to pay the said note, and the same could have been collected from the maker by process of law; but that the plaintiff neglected and refused to proceed against the said maker of the said note, as it was requested to do, and that thereafter the said maker of the said note became, and now is, wholly insolvent, and has departed from this state. The allegations of this paragraph are made on information and belief.

''Second. For a second defense to the first cause of action set forth in said complaint: (1) That the note described in the first cause of action in the said complaint was at all the times hereinafter mentioned secured by the pledge of ten shares of capital stock of the Black Hills National Bank, a corporation duly organized under the national banking laws of the United States of America, and formerly engaged in the banking business at Rapid City, South Dakota, which said ten shares of stock was pledged and deposited by the defendant William H. Seward with the plaintiff to secure the payment of the said note. (2) That these defendants, on or about the 21st day of February, 1894, and shortly after the maturity of the said note, demanded of the plaintiff that it should forthwith proceed to collect the said note by foreclosure of its lien upon said bank stock, and a sale thereof in the manner provided by law; but that the plaintiff refused and neglected to do so. That at the time of the aforesaid demand or request, to wit, on or about February 21, 1894, and for several months thereafter, the said ten shares of bank stock was of the reasonable value of $1,250, but that by reason of the subsequent failure and suspension of the said Black Hills National Bank the said bank stock has become wholly worthless; and by reason of the plaintiff's refusal and neglect to foreclose its lien on said ten shares of bank stock pursuant to the request or demand of these defendants, they have been deprived of the benefit of the said security.''

The same defenses were pleaded to the $60 note. These defendants, on the trial, introduced evidence in support of their answer, which plaintiff moved to strike out on the ground that the defendants were guarantors, and not sureties, and hence could not make the defenses set up in the answer. The motion was overruled, and the plaintiff excepted. At the close of all the evidence the plaintiff moved the court to direct a verdict for the plaintiff upon substantially the same grounds. This motion was denied, exception taken, and the case was submitted to the jury.

We are of the opinion that the court ruled correctly in overruling plaintiff's motion to strike out the evidence, and in denying the plaintiff's motion for a direction of the verdict. The contention of the appellant that the court erred in his rulings would probably be correct if Price and Buell were in fact guarantors, and not sureties. But, while the defendants, Buell and Price, used the term "guaranty" in their contract, it would seem they were, under our Code, sureties, assuming, as it is apparently conceded, that they executed the guaranty to give credit to the principal debtor, and not for any benefit to themselves. Under the provisions of our code, where such is the case, the party is a surety, and not a guarantor, within the meaning of those terms as used in the Code. The text-books and most of the reports make no very clear distinction between a surety and a guarantor. But in preparing the Civil Code for the state of New York (but which was never adopted in that state) the commissioners, in their notes to Sec. 1558, of which our Sec. 4297 is a copy, make a clear and well defined distinction between a surety and a guarantor. They say: "The distinction between a surety and a guarantor is, that the former enters into the contract primarily for the benefit of the debtor, while with the latter the benefit of the principal debtor is no part of the inducement to him to contract." Civ. Code, N. Y. p. 467. In other words, a guarantor is one who enters into the contract mainly for his own benefit and not for the benefit of

the principal debtor. The distinction above made was adopted by the commissioners who prepared the California Codes. See note to Sec. 2831, Civ. Code Cal. The chapter on guaranty and the chapter on suretyship are to be construed with this distinction in view.

If the defendants Price and Buell made their guaranty upon the note in controversy before it was delivered, and for the purpose of giving credit to the maker, they are sureties, and entitled to all the rights of sureties, notwithstanding the use of the word "guaranty" in their contract. By Sec. 4305, Comp. Laws, it is provided: "A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety himself cannot pursue, and which would lighten his burden; and if, in such case, the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced." This section is copied from Sec. 1566 of the New York Code, above referred to, and is an innovation upon the common law rule as adopted in many of the states outside of New York. The cases referred to by the New York Code commissioners as authority for the rule, and adopted by the code commissioners of California, are: Pain v. Packard, 13 Johns. 174; King v. Baldwin, 17 Johns. 384; Warner v. Beardsley, 8 Wend. 195; Manufacturing Co. v. Sweeting, 10 Wend. 163; Scroeppell v. Shaw, 3 N. Y. 446; Remsen v. Beekman, 25 N. Y. 552. The rule as codified in our state has been followed in New York since the original case of Pain v. Packard, *supra*; Colgrove v. Tallman, 67 N. Y. 95. We may reasonably presume that the codifiers of our own Code had before them these notes and decisions of the courts of New York, referred to by the commissioners, in preparing the Code for this state, and adopted the provisions of the proposed Code for New York, as construed by the commissioners of that state. These notes and the decisions referred to are valuable aids in construing the various provisions of our Code. It is quite clear from these notes and decisions that the commissioners intended

by the section above quoted to adopt the New York rule. Mr. Deering in his recent annotated California Codes, says, in a note to the corresponding section in the Civil Code of that state that the adoption of that section changed the rule as it previously existed in California. Deering's Civ. Code Cal., note to Sec. 2845. Treating the defendants Price and Buell as sureties. their answer sets up a good defense, and the various issues arising thereunder should have been submitted to the jury. The learned circuit court, however, in his charge to the jury proceeded on an erroneous theory. He instructed the jury that there was but one issue in the case for them to determine, and that was, in substance, whether or not the bank stock pledged by the principal defendant as additional security for the notes was of any value when the notes became due, and if of any value, what value. No negligence on the part of the plaintiff for a failure to sell the bank stock is alleged. and unless the defendants Price and Buell were sureties, and had the right to require the plaintiff to proceed and collect the notes as provided in Sec. 5305, Comp. Laws, before referred to, they would not be exonerated by the mere delay of the plaintiff in selling the stock. The evidence was conflicting as to whether or not Price and Buell did direct the plaintiff to proceed and sell the stock, and also as to the value of the stock when the notes became due. The failure of the court to submit the former question to the jury was clearly error, for which a new trial must be granted.

The nature and character of the demand made upon the creditor to proceed against the principal debtor and the pledged security is important. The demand must be specific and definite, in order to be sufficient to exonerate the surety. Kennedy v. Falde, 4 Dak. 319, 29 N. W. 667. It might be necessary to submit to the jury the question under the proof as to whether or not the defendants Price and Buell were sureties or guarantors under the rules we have laid down for determining that question. The judgment and order of the circuit court denying a new trial are reversed, and a new trial ordered.

FULLER, J. (dissenting). Respondents Buell and Price admit in their answer, and maintain in their argument before this court, that they are guarantors of payment, and upon that theory alone the case was tried in the court below, without any intimation that the contract by which they are bound is one of suretyship. At the conclusion of all the testimony, appellant moved the court to direct the jury to return a verdict in its fa- vor for the full amount claimed, for the reason that there was "no evidence in the case of any positive act on the part of the plaintiff by which the rights of the guarantors were injured in any way." This motion being denied, the ruling of the court thereon is assigned as error. The written guaranty of respond- ents was placed on the back of these notes for the benefit of the maker, and amounts to an unconditional undertaking upon their part to pay, without demand or notice, the amount due thereon, immediately upon default of the principal. Comp. Laws, §§ 4283, 4284. The reciprocal rights, duties, and obliga- tions of the parties before us are not such as are created by the relation of creditor and surety, and it is immaterial under the statute whether respondents, or either of them, did in fact re- quest appellant to proceed against the defendant Seward, or resort to any other remedy within its power which they, as guarantors, could not pursue. Says Mr. Daniel, in his treatise on the Law of Negotiable Instruments: A guarantor is a species of surety, and will be discharged by any act of a cred- itor that would discharge a surety." 2 Daniel, Neg. Inst. 817. Again: "Mere delay and passivity of the creditor does not dis- charge a drawer or indorser, or other surety, even when the delay and subsequent insolvency of the principal deprives him of all means of reimbursement; and unless authorized so to do by statute, he cannot, by request or notice, compel the creditor to sue the principal debtor." Id. 344. It seems to be well settled, both upon principle and authority, that the status of guarantors of payment and sureties with reference to the right to require and the duty of the creditor upon demand to proceed

against the maker of a promissory note, is, in the absence of express statutory authority, identical, and neither is discharged from liability by reason of the delay or negligence of the creditor in the collection of the debt by suit or by the sale of property pledged as collateral security, although he has been requested to thus proceed. Mr. Brandt, in stating his views, employs the following language: "The great majority of cases on the subject hold, in the absence of any statutory provision, that if, after the debt is due, the surety request the creditor to sue the principal, who is then insolvent, and the creditor fails to do so, and the principal afterwards becomes insolvent, the surety is not thereby discharged. The ground upon which these decisions rest is that the principal and surety are both equally bound to the creditor, who may have taken a surety in order that he might not have to sue the principal. If the surety desires a suit brought against the principal, he may himself pay the debt, and immediately sue the principal. The contrary doctrine is an innovation, and was unknown to the common law." Brandt, Sur. § 208. One who has guarantied the payment of a promissory note in the manner and under the circumstances disclosed by the record before us is not exonerated unless there be some act upon the part of the creditor by which the original obligation of the principal is, without the guarantor's consent, altered, or the remedies or rights of the creditor against the principal impaired or suspended. Comp. Laws, § 4290. Obviously there has been no act or omission on the part of the creditor by which the original obligation has been changed in any manner, and all the legal rights and remedies that ever existed in favor of appellant against the defendant Seward have continued without interruption, and have remained unimpaired. Respondent's liability being fixed, upon the maturity of the notes it was their duty to pay the debt as requested, and it was not within their power to thus convert appellant's right to proceed against the principal obligor into a like duty upon its part, which, upon failure of immediate per-

formance, would relieve them from the obligation into which they had entered. Sec. 4294 of the Compiled Laws provides that "mere delay on the part of a creditor to proceed against the principal, or to enforce any other remedy, does not exonerate a guarantor;" and, while Sec. 4304 gives to a surety all the rights of a guarantor, there is no statutory provision conferring upon a guarantor of payment the right of a surety, under Sec. 4305, to require a creditor to proceed against his principal; and the common law rule that delay after demand will exonerate neither, though once alike applicable to both, now prevails only as to the guarantor. Without some affirmative act or omission of duty on the part of a creditor, a guarantor is not exonerated by the discharge of his principal, even by operation of law. Comp. Laws, § 4296. The execution, delivery, and nonpayment of the notes being conceded, and the making of the guaranty being admitted, it seems clear to me that no defense was alleged in the answer or offered at the trial tending to exonerate respondents. Without departing from the theory upon which the case was tried, or holding that a guarantor of payment has in this state authority to compel a creditor to proceed against the principal debtor, and that mere delay will exonerate a guarantor, the majority opinion cannot, in my judgment, be justified. The case should be remanded, with the direction that judgment in circuit court be entered in favor of the plaintiff for the amount found to be due upon the notes.